# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

WESLEY FORD, Reg. #17776-026                                                      PLAINTIFF

v.                                No. 2:15CV00037 JLH

UNITED STATES                                                                    DEFENDANT

## OPINION AND ORDER

Wesley Ford is an inmate at the federal prison facility in Forrest City, Arkansas. He commenced this action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq*. He alleges that the prison negligently failed to provide adequate dental care, to provide hearing aids, to treat his back pain, to control his eczema, and to treat his allergies. Document #2. The United States has moved for summary judgment on all claims. For the following reasons, the government's motion is granted in part and denied in part.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be

drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

Ford's medical treatment history is extensive and varied, but this case primarily concerns treatment he received for dental, back, and hearing issues while at a federal prison in Forrest City, Arkansas. He has been an inmate at Forrest City since February of 2014. Document #2 at ¶ 6. Before arriving at Forrest City, he was housed in a federal transfer center in Oklahoma City. *Id.* While there, he was seen by a registered dental hygienist in January 2014. Document #54-2 at 4. Ford had filled out a health intake assessment, noting that he had pain in his teeth and mouth and suffered from eczema. *Id.* at 15. He told the hygienist that his teeth were throbbing and assessed the pain as a "7" on the pain scale. *Id.* at 4. The hygienist determined that the teeth numbered 17-19 had "gross decay to [the] gumline." *Id.* She gave him oral hygiene instructions and noted that she would consult a dentist about antibiotic and pain therapy. *Id.* at 5. The same day a dentist prescribed a Penicillin and Ibuprofen ten-day regimen because Ford had "caries extending into pulp." *Id.* at 6. A dentist saw Ford later in January 2014, and extracted teeth 17-19. *Id.* at 12. The dentist prescribed Ford an oral rinse as well as a nutritional supplement. *Id.* at 13.

Upon transfer, Ford was evaluated at Forrest City. He was seen by a registered nurse on February 3, 2014. *Id.* at 20. The nurse recorded that Ford had no pain or swelling in his teeth or mouth, was under no current dental treatment, but complained of needing bottom teeth pulled. *Id.* She also recorded "eczema" under the "Observations" section. *Id.* at 21. The nurse listed "Dental Complaint" and "Dentures" among potential items for follow-up. *Id.* At the time, Ford had a top plate of dentures. *Id.* Two days later, Ford was seen by a certified physicians assistant. *Id.* at 26.

She too noted that Ford had no pain or swelling in his teeth or mouth and was under no current dental treatment. *Id.* at 28. Ford made an unspecified dental complaint and she referred him to dental sick call the next morning. *Id.* Despite Ford missing many teeth and having a top plate of dentures, the physicians assistant made the following notations: Gums Normal: Yes; Teeth Poor Dentition: No; Teeth Count: Mostly Present; Dentures: No. *Id.* at 33. She listed "Dental Complaint" and "Dentures" among potential items for follow-up. *Id.* at 36. In the "Observations" section, she wrote that Ford had a history of eczema. *Id.* at 29. She referred Ford to the commissary for over-the-counter treatments for his eczema and instructed him that he could place a sick call if he did not experience relief. *Id.* at 37.

On February 18, 2014, a doctor made an administrative note on Ford's medical file asking why he had been prescribed a nutritional supplement while at the transfer facility and stating that he "need[ed] an evaluation for this." *Id.* at 46. Ford saw a dental hygienist on February 25, 2014. *Id.* at 49. The hygienist listed "Edentulism, partial, unspecified" and "Dental caries extending into pulp" as current health problems, but she listed "Dermatitis/eczema" as a resolved health problem. *Id.* She noted that Ford had 21 missing teeth and 11 decayed teeth. *Id.* at 53.

On April 24, 2014, Ford filled out two inmate request forms—one complaining of his hearing loss, which the prison staff interpreted as Ford requesting a hearing exam, and the other complaining of dental pain and requesting that all of his teeth be removed so that he can get dentures. *Id.* at 73-74. Ford expressed concern that his dental pain was caused by an infection. *Id.* at 74. The prison staff added Ford to the "treatment list" for his dental issues. *Id.* Ford's medical records reflect that on May 7, 2014, a nurse scheduled a hearing test for Ford on May 9, 2014. *Id.* at 76. This hearing test was rescheduled for March 2, 2015, for unknown reasons. Document #54 at ¶ 18. On February 13, 2015, Ford again filled out an inmate request form. Document #54-2 at 90. In it he

3

complained of eczema, lower back pain due to nerve damage, and hearing issues. *Id.* He expressed dismay that he had not yet received treatment for these issues. *Id.* The prison staff responded that he was on the call-out to see a nurse for his eczema and that a nurse will write a consult for an audiology exam and appointment with an ear, nose, and throat specialist. *Id.* After Ford had an audiometric examination indicating profound hearing loss, a nurse practitioner ordered a consultation with an otolaryngologist. *Id.* at 91. The nurse practitioner described the consultation as medically necessary but non-emergent. *Id.* The request was approved on March 3, 2015, by Dr. Martin Tindel, the Institution Clinical Director at Forrest City. *Id.* at 99.

On March 10, 2015, a nurse practitioner met with Ford regarding his three complaints in the February 2015 inmate request form. The nurse practitioner noted that Ford reported that his back pain was due to nerve damage and underdeveloped nerves. *Id.* at 103. Ford assessed his back pain as a "5." *Id.* The nurse practitioner prescribed Tylenol for his lower back pain. *Id.* at 106. On April 10, 2015, a doctor also prescribed Ford an anti-inflammatory medication. *Id.* at 108. Ford was seen by a doctor on April 14, 2015, for his lower back pain, complaining that his condition was unimproved. *Id.* at 111. Ford presented to the chronic care clinic on June 9, 2015, with complaints of back pain. *Id.* at 113. A doctor ordered blood tests and an x-ray of his lumbar spine, and scheduled a follow-up for November 27, 2015, to go over the blood work and x-ray. *Id.* at 113-17. At the same time Ford presented to the chronic care clinic for back pain, his medical file listed "Dental caries extending into pulp" and "Edentulism, partial, unspecified" as "current" health problems. *Id.* at 123.

On July 29, 2015, Ford was seen by a dental hygienist and a dentist. The dental hygienist noted that Ford had bleeding gums, severely decayed teeth, and loose teeth. *Id.* at 145, 147. The dentist created a care plan that called for the rest of Ford's teeth to be extracted and full dentures.

4

*Id.* at 148, 152. The plan listed tooths 21-29 and 31-32 for extraction. *Id.* at 148. Ford's records reflect that he did not report any pain to the hygienist or dentist. *Id.* at 147.

On August, 17, 2015, a radiologist read Ford's x-ray of his lumbar spine and simply concluded that it was negative. *Id.* at 153. On November 24, 2015, Ford visited an otolaryngologist in Memphis, Tennessee. *Id.* at 155. The otolaryngologist determined that a follow-up visit was needed so that Ford could undergo additional tests. *Id.* at 157. The tests were scheduled for February 25, 2016. *Id.* at 162. Ford had the tests on February 2, 2016, and it was determined that he needed hearing aids. *Id.* at 167.

On February 9, 2016, Ford went to the prison's dental services, complaining of a broken tooth that was causing his face to swell. *Id.* at 169. The dentist determined that the pain was caused by an infected retained residual root, which was causing facial and vestibular swelling. *Id.* The tooth was not restorable and was extracted on February 17, 2016. *Id.* at 172.

On June 2, 2016, went to the chronic care clinic, complaining of back pain and that he still did not have hearing aids. *Id.* at 173. He rated his pain as an 8/10 and told the doctor that the medication he was taking for the pain was no longer effective. *Id.* The doctor prescribed a different medication and also requested a follow-up appointment for Ford with the otolaryngologist. *Id.* at 177. On July 11, 2016, Ford complained of back pain and burning skin, but his medical file notes that he refused treatment. *Id.* at 186. On July, 26, 2016, a nurse practitioner requested an audiology appointment for Ford to get fitted for hearing aids. *Id.* at 187.

On September 21, 2016, Ford had a routine dental exam. *Id.* at 190. The dentist again created a care plan that called for the rest of Ford's teeth to be extracted and full dentures. *Id.* at 191. This time, however, the plan listed tooths 1-16 and 20 for extraction. *Id.* Ford did not want his teeth extracted at that time and deferred treatment. *Id.* Ford says that he did not want his teeth

extracted until the dentures were ready because it would be too difficult and painful to chew his food. Document #63 at 3-4. Ford's medical records do not reflect that he has had his remaining teeth extracted or that he has been fit for dentures. As of October 27, 2016, his medical records still list "Dental caries extending into pulp" and "Edentulism, partial, unspecified" as current health problems. Document #54-2 at 188. On October 11, 2016, Ford was successfully fit for hearing aids. *Id.* at 194.

Ford's complaint advances claims under five headings: failure to provide adequate dental care, negligent failure to provide hearing aids, negligent failure to treat or ameliorate back pain, negligent failure to control eczema, and negligent failure to treat allergies and mitigate the suffering of allergies. Some of these claim headings contain multiple bases. In his first claim, Ford makes allegations relating both to the negligent treatment of his teeth and to the negligent staffing and administration of the prison's facilities. *See, e.g.*, Document #2 at ¶¶ 28-31, 57 (describing prison's neglect of his dental condition); Document #2 at ¶¶ 32-40 (describing prison's allegedly unlawful administration of dental care). Ford's second claim regarding hearing aids is based only on the prison's inadequate provision of care. *Id.* ¶ 72. Conversely, Ford's third claim, like his first, contains allegations both of negligent treatment of his back pain and negligent failure to offer certain devices and provisions. *Id.* ¶¶ 74-77 *and* ¶¶ 78-93. Ford's fourth claim relates only to the prison's administrative decisions regarding soap and skin cleansing products. *Id.* ¶¶ 142-49. Likewise, Ford's fifth claim complains of the prison's administration of its climate but not of any negligent treatment of his allergies. *Id.* ¶ 192.

The government argues that Ford's claims fail because (1) the United States has not waived sovereign immunity for the types of claims Ford brings and (2) Ford has not offered medical expert testimony to support his medical negligence claims as required by Arkansas law. The government

is correct that the United States, as a sovereign, is immune from all suits except those to which it consents. *See Hercules Inc. v. United States*, 516 U.S. 417, 422, 116 S. Ct. 981, 985, 134 L. Ed. 2d 47 (1996). Through the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, the United States has consented to suit with respect to certain tort claims.

The Act contains two relevant carve-outs: the discretionary function exception and the private analogue. The United States retains its immunity when a claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Courts lack subject matter jurisdiction over claims that fall within this discretionary function exception. *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 795 (8th Cir. 1998). The exception applies where (1) the challenged governmental action is the product of "judgment or choice"—that is, where no statute, regulation, or policy mandates a specific course of action—and (2) the judgment or choice is grounded in social, economic, or political policy considerations. *Id.* The United States also consents to suit only for claims "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, the "private analogue" must be found in Arkansas law. *See United States v. Olson*, 546 U.S. 43, 44, 126 S. Ct. 510, 511, 163 L. Ed. 2d 306 (2005).

The discretionary function exception bars Ford's claims based on the prison's administration of dental care, inadequate provision of care relating to his hearing issues, inadequate provision of certain items to ameliorate his back pain, administrative decisions regarding soap and skin cleansing products, and administration of its climate. Document #2 at ¶¶ 32-56, 60-66, 67-72, 78-119, 120-149, 150-192. The government has discretion in providing the manner and means of treatment as

7

well overseeing and administering household functions like placement of prisoners and stocking of supplies. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 811, 104 S. Ct. 2755, 2763, 81 L. Ed. 2d 660 (1984) (explaining that the discretionary exception "includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations"). Whether the prison administered an effective "list" program for dental treatment or provided adequate hearing care, whether the prison provided back-friendly items or adequately stocked hygiene supplies, or whether the prison adequately controlled its climate are all discretionary decisions. *See Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007) (describing discretionary functions as those that involve an "element of judgment or choice"); *Dykstra*, 140 F.3d at 795 (explaining that where no mandate governs the governmental action, it is considered a product of judgment or choice); *see also Dugan v. Warden, FCC Coleman-USP I*, No. 15-12623, 2016 WL 7383729, at *2 (11th Cir. 2016) (unpublished per curiam) (holding that discretionary function exception barred prisoner's claim that prison failed to provide adequate hygiene products); *Paulette v. Morrison*, 84 F. App's 730 (8th Cir. 2004) (unpublished per curiam) (maintaining adequate security at facility falls within the discretionary function exception); *Harlan v. United States*, No. 4:15-CV-04046-KES, 2016 WL 7015706, at *11 (D.S.D. Dec. 1, 2016) (holding that no statutes dictated how the government facility needed to staff dental services). Having concluded that these claims fall within the first prong of the discretionary function exception, the Court presumes that the governmental action involved considerations of public policy. *See Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 605 (8th Cir.), *cert. denied*, 137 S. Ct. 597, 196 L. Ed. 2d 476 (2016). Ford bears the burden of rebutting this presumption. *Id.* He has not carried this burden.

The exception does not, however, bar his medical negligence claims. Document #2 at ¶¶ 8-

31, 57-59, 73-77. The government does not have discretion in prescribing and carrying out the proper course of treatment for inmates. *See Lather v. Beadle Cty.*, 879 F.2d 365, 368 (8th Cir. 1989) ("Where only professional, nongovernmental discretion is at issue, the discretionary function exception does not apply."). Medical professionals determine what is necessary for treating an inmate's ailments. "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989). Ford's medical records reflect that Ford suffered with severely decayed teeth for a very long time. The prison's dental staff regularly noted the sad state of his teeth. Yet, these teeth were not and, as far as the Court knows, have not been extracted during his stay at Forrest City.[1] Ford also told prison medical staff that his back pain was due to nerve damage, which he says requires an MRI for proper treatment. The Court nor the government is equipped to determine the medical standard of treatment for a person with Ford's ailments. Ford's claims relating to the negligent medical treatment of his teeth and back are not barred by the discretionary function exception.

The next question is whether these remaining claims have a private analogue in Arkansas law. Arkansas's Medical Malpractice Act sets forth the liability of medical care providers. Ark. Code Ann. § 16-114-201 *et seq*. Arkansas law supplies Ford's remaining claims with a private analogue.

As the government points out, though, Arkansas law requires expert testimony to prove a medical negligence claim "when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge." Ark. Code Ann. § 16-114-206(a). Ford has not

---

[1] Ford did decline treatment in September 2016. But Ford and the medical records present sufficient reasons to understand Ford's decision. First, Ford understandably did not want his teeth extracted until he had been fitted for dentures and would timely receive them. Second, the care plan created by the dentist listed teeth for extraction that did not at all match the previous care plan or any of Ford's previous medical records.

offered any expert testimony, and so the government argues that his claims cannot survive summary judgment. Ford has moved for appointment of counsel. Document #19. Ford has successfully alleged medical negligence claims on his own. At this point, the Court is unwilling to grant summary judgment to the government without Ford having the assistance of counsel, without which he cannot reasonably be expected to secure expert testimony.

## CONCLUSION

For the foregoing reasons, the government's motion is GRANTED IN PART and DENIED IN PART. Document #48. Only Ford's claims relating to the alleged negligent medical treatment of his teeth and back remain. Document #2 at ¶¶ 8-31, 57-59, 73-77. The Court also GRANTS Ford's motion for appointment of counsel. Document #19. The Court will appoint a lawyer to represent Ford by separate order.

IT IS SO ORDERED this 3rd day of May, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE